UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
NOV 2 0 2009
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA          :
                                  :
v.                                :
                                  :   Criminal No. 09-150 (RBW) — 2
GWENDOLYN STEINGRABER MYERS,      :
a/k/a Agent 123 and Agent E-634   :
                                  :
                                  :
Defendant                         :
                                  :

**STATEMENT OF OFFENSE ELEMENTS AND
FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Gwendolyn Steingraber Myers (hereinafter also referred to as "Gwendolyn Myers" or "the defendant"), hereby submit this statement of offense elements and factual proffer in support of the defendant's plea of guilty to Count One of the Information.

**I.   STATEMENT OF OFFENSE ELEMENTS**

Gwendolyn Myers is charged in Count One of the Information with knowingly conspiring to gather and transmit national defense information, in violation of Title 18, United States Code Section 793(g). To find Gwendolyn Myers guilty of Count One, the Government would need to prove each of the following elements beyond a reasonable doubt:

- First, from in or about 1979 through and continuing to on or about June 4, 2009, within the District of Columbia and elsewhere, an agreement existed between herself and another person to commit the crime of gathering and transmitting national defense information in violation of Title 18, United States Code, Section 793(b),[1] (d)[2]

---

[1] The essential elements of a violation of 18 U.S.C. § 793(b) are as follows:

- First, the defendant copies, takes, makes or obtains, or attempts to copy take,

or (e);[3]

---

      make or obtain, documents relating to the national defense;

- that the defendant so acted with intent or reason to believe that documents were to be used to the injury of the United States or to the advantage of any foreign nation.

See 18 U.S.C. § 793(b).

[2]The essential elements of a violation of 18 U.S.C. § 793(d) are as follows:

- First, that the defendant had lawful possession of, or access to or control over, documents or information relating to the national defense;

- Second, that the defendant communicated, delivered or transmitted, or attempted to communicate, deliver or transmit, the same documents or information relating to the national defense to a person not entitled to receive it;

- Third, in an instance where a defendant orally discloses information rather than disclosing a document, that the defendant acted with reason to believe that the information in question could be used to the injury of the United States or to the advantage of a foreign nation; and

- Fourth, that the defendant acted willfully.

See 18 U.S.C. § 793(d).

[3]The essential elements of a violation of 18 U.S.C. § 793(e) are as follows:

- First, that the defendant had unauthorized possession of documents or information relating to the national defense;

- Second, that the defendant communicated, delivered or transmitted, or attempted to communicate, deliver or transmit, the same documents or information relating to the national defense to a person not entitled to receive it;

- Third, in an instance where a defendant orally discloses information rather than disclosing a document, that the defendant acted with reason to believe that the information in question could be used to the injury of the United States or to the advantage of a foreign nation; and

- Fourth, that the defendant acted willfully.

- Second, the defendant intentionally joined that agreement; and

- Third, one of the persons involved in the conspiracy did something for the purpose of carrying out the conspiracy.

## II.   FACTUAL PROFFER IN SUPPORT OF THE GUILTY PLEA

Gwendolyn Myers is a United States Citizen born in 1938. She married her husband, Kendall Myers, on or about May 8, 1982.

Prior to their marriage, in or about December 1978, Kendall Myers, while an employee of the Department of State's Foreign Service Institute (FSI), traveled on "unofficial personal travel for academic purposes" to the Republic of Cuba. He was invited to Cuba by a Cuban government official who had made a presentation at FSI. That individual was an intelligence officer for the Cuban Intelligence Service, or CuIS. CuIS is a part of the government of the Republic of Cuba. Among other functions, it is charged with gathering foreign intelligence information of interest to Cuba and its allies. The United States was, and continues to be, a principal target for Cuba's intelligence gathering. Kendall Myers' two-week trip to Cuba in 1978 provided CuIS with the opportunity to assess and develop Kendall Myers potential as a Cuban agent.

Kendall Myers kept a diary of his 1978 trip to Cuba. It was recovered by the Federal Bureau of Investigation (FBI) as part of this investigation. In the diary, Kendall Myers stated that, prior to his trip to Cuba, he had become "bitter" and "radicalized" watching the evening news in the United States. The diary talks of "abuses" and "oppression" that Kendall Myers perceived in America and compares that to the Cuban people who he believed had been "lifted

---

See 18 U.S.C. § 793(e).

-3-

[by Fidel Castro] out of the degrading and oppressive conditions which characterized pre-revolutionary Cuba." As for Fidel Castro, Kendall Myers asserted that he was a "brilliant and charismatic leader" and "certainly one of the great political leaders of our time." He concludes, "[t]here may have been some abuses under the present regime [in Cuba] . . . but no one can make me believe that Cuba would have been better off if we have [*sic*] defeated the revolution. The idea is obscene."

In 1979, approximately six months after Kendall Myers returned from his trip to Cuba, the same Cuban intelligence officer who had invited him to Cuba visited him and Gwendolyn Myers in South Dakota, where they were living at the time. During that visit, the Cuban intelligence officer recruited both Kendall and Gwendolyn Myers to be clandestine agents for Cuba, a role that they served in for the next 30 years. Their recruitment as "paired" agents is consistent with CuIS's past practice in the United States.

Thereafter, CuIS instructed Kendall Myers to pursue a position that would provide him with access to classified U.S. Government information at either the Department of State or the Central Intelligence Agency (CIA). Government records show that Kendall and Gwendolyn Myers returned from South Dakota to Washington, D.C. in 1981 and that Kendall Myers subsequently applied for an intelligence analyst position with the CIA. Kendall Myers ultimately decided, however, to pursue a permanent position with access to classified information at the Department of State because, unlike at the CIA, he would not need to pass a polygraph to be granted a security clearance at the Department of State.

The government's evidence at trial would have demonstrated that CuIS often communicated with its clandestine agents in the United States by broadcasting encrypted radio

messages from Cuba on shortwave radio frequencies. Clandestine agents in the United States monitoring the frequency on shortwave radio could decode the messages using decryption programs provided by the CuIS. Kendall Myers and Gwendolyn Myers communicated with CuIS by this method. The shortwave radio they used to receive clandestine communications was purchased with money provided by CuIS.

Department of State records demonstrate that Kendall Myers received a TOP SECRET security clearance on or about March 27, 1985, which was later increased in or about September 1999, to TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION (SCI). SCI is a designation given to especially sensitive information that requires special controls for restricted handling.

Kendall Myers received his TOP SECRET/SCI clearance in September 1999, just as he was beginning to work full time as a senior intelligence analyst at the Department of State's Bureau of Intelligence and Research (or INR). INR is responsible for drawing on intelligence from throughout the United States government to provide analysis of events to policy makers at the Department of State. During his employment at INR, Kendall Myers had daily access to TOP SECRET/SCI information. Kendall Myers maintained his TOP SECRET/SCI clearance until his retirement on October 31, 2007.

"TOP SECRET" information is defined by Executive Order 12958, as amended by Executive Order 13292, and their predecessor orders, Executive Orders 12356 and 12065, as information, the unauthorized disclosure of could reasonably result in "exceptionally grave" damage to the national security. "SECRET" information is defined as information, the unauthorized release of which could reasonably result in "serious" damage to the national

security.

Classified information, of any designation, may be shared only with persons determined by an appropriate United States government official to be eligible for access to classified information, who have signed an approved non-disclosure agreement and who possess a "need to know." If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

At no time during his employment with the Department of State was Kendall Myers ever authorized, directly or indirectly, to deliver, communicate, or transmit sensitive or classified information to agents, officers, or employees of CuIS or any other hostile foreign intelligence service.

At no time was Gwendolyn Myers ever granted a security clearance by the United States government, or otherwise authorized to receive classified information. At no time were any agents, officers, employees or representatives of CuIS ever authorized by the United States Government to receive classified United States Government information.

Kendall Myers was repeatedly informed of his obligations with regard to the protection of classified information. On June 12, 1985, April 30, 1991, and September 15, 1999, he executed Classified Information Nondisclosure Agreements wherein he acknowledged the special confidence and trust that the United States Government had placed in him by providing him access to classified information. Further, he acknowledged in those agreements that the unauthorized disclosure of classified information could cause irreparable harm to the United States, and affirmed that he would never so divulge classified to someone not authorized to receive it. Finally, he acknowledged that any such unauthorized disclosure of classified

information could constitute a violation of the United States criminal laws, including 18 U.S.C. § 794, the offense to which he is pleading guilty.

Beginning in April 2009, the FBI initiated an undercover operation against Kendall and Gwendolyn Myers. The operation was successful. During that operation, Kendall Myers was approached by an FBI undercover source posing as a Cuban intelligence officer. The source convinced Kendall Myers that he was the new CuIS handler for him and Gwendolyn Myers – that is, an intelligence officer whose purpose was to guide them in their activities as agents of Cuba. During their initial meeting, Kendall Myers told the source, referring to himself and Gwendolyn Myers, that "we've been a little nervous . . . and . . . I think you should tell them that . . . we've been nervous because, because we didn't want to hurt them." He continued, "[w]e have been very cautious, careful with our moves and, uh, trying to be alert to any surveillance."

Both Kendall Myers and Gwendolyn Myers met four times with the source – on April 15th, 16th, and 30th, and on June 4, 2009. The meetings were held in various hotels in Washington D.C. All of the meetings were video and audio taped. During those meetings:

- Kendall Myers and Gwendolyn Myers were trained by the source in the use of an e-mail account and a simple code for use in future communications with the source, and in the use of an encryption device for purposes of encrypting e-mail communications with the source;

- Kendall Myers and Gwendolyn Myers selected and used a parole, or pass phrase, with the source that Gwendolyn Myers acknowledged they had used in the past in their meetings with CuIS representatives; and

- Kendall Myers accepted, and responded to, written tasking from the source soliciting Kendall Myers views and opinions about various Executive Branch personnel with responsibility for Cuba and Latin America policy.

Kendall Myers also asked the source "So how is everybody at home?," referring to Cuba.

Kendall Myers asked the source to "send special greetings…and hugs" to certain CuIS officials in Cuba.

Further, during their meetings with the source, Kendall Myers and Gwendolyn Myers made a series of statements about their past activities on behalf of CuIS, including acknowledging:

- that Gwendolyn Myers code name was "123;"

- that Kendall Myers code name was "202;"

- that they had transmitted information to their CuIS handlers through a variety of means including, personal meetings, "dead-drops," "hand-to-hand" passes, and, at least in one case, the exchange of shopping carts at a grocery store;

- that, in recent years they had traveled overseas to meet face-to-face with their CuIS handlers in, among other places, Trinidad and Tobago, Jamaica, Mexico, Brazil, Ecuador, and Argentina;

- that their last face-to-face meeting with a CuIS handler was in December 2005 in Guadalajara, Mexico; and

- that, since that date, they had remained in contact through clandestine emails with a CuIS representative who used the cover name of "Peter."

When asked by the UCS during the April 16, 2009, meeting if he had ever delivered information to CuIS that was classified more than SECRET, Kendall Myers replied, "oh yeah . . . oh yeah." As for how he took classified information out of the Department of State, Kendall Myers stated that he typically would either memorize the information in documents, or take notes on the documents, and then put the notes in his office safe. On certain occasions, Kendall Myers would remove classified documents from the Department of State and bring them home. Gwendolyn Myers admitted that she would then process the documents page-by-page at home for delivery to their CuIS handlers. The next day, Kendall Myers "slipped them . . . back in" the

Department of State.

In the final meeting with the source on June 4, 2009, just prior his and Gwendolyn Myers' arrest, Kendall Myers disclosed to the source U.S. government information concerning sources and methods of gathering intelligence, which information related to the national defense and was classified TOP SECRET. KENDALL MYERS admitted to the source that he knew the information was classified TOP SECRET and that he had previously disclosed the information to CuIS. Gwendolyn Myers indicated that she understood the sensitivity of the classified information which Kendall Myers revealed to the source and which was previously passed to Cuba.

The admissions made by Kendall Myers and Gwendolyn Myers during the undercover operation have been corroborated by other evidence collected during the investigation. A court-authorized search led to the discovery of the shortwave radio that was described to the source during one of the meetings. It is the same make and type of radio that has been used by other Cuban agents. The FBI has also identified travel records corroborating the overseas operational travel undertaken by Gwendolyn and Kendall Myers to Trinidad and Tobago, Jamaica, Mexico, Brazil, Ecuador, and Argentina. It has identified the clandestine "Peter" emails sent to the Myers' personal email account. Further, the FBI located in the Myers' apartment, a sailing guide for Cuban waters, a travel guide for Cuba, and books entitled The Spy's Bedside Book and On Becoming Cuban.

The FBI has also identified encrypted shortwave radio messages between CuIS and a handler responsible for Gwendolyn Myers and Kendall Myers that were broadcast during 1996 and 1997. Those messages referred to agents 202 and 123, which again, they admitted during the

undercover operation were code names used for them by CuIS. One of these encrypted handler shortwave messages sent on or around December 18, 1996, refers to a certain agent having a tumor on the shoulder. During a court-authorized search of the defendants' apartment, the FBI found medical records which demonstrate that in late December 1996, just 10 days after CuIS made reference in a broadcast to an agent having a tumor on the shoulder, Gwendolyn Myers had a medical procedure to remove a tumor from her shoulder.

Further, an examination of Kendall Myers' Department of State computer revealed that from August 22, 2006, until his retirement in October 31, 2007, he viewed in excess of 200 intelligence reports that dealt with the subject of Cuba. More than 75 of these made no mention of areas for which Kendall Myers had substantive responsibility as an employee of INR. The majority of those reports were marked either SECRET or TOP SECRET.

During this investigation, handwritten notes of Kendall Myers were located at the Department of State. These notes were created by Mr. Myers between August and October 2006. The content of the notes reflect Mr. Myers' gathering and retention, for the benefit of CuIS, United States government information concerning sources and methods of gathering intelligence, which information related to the national defense and was classified TOP SECRET. The government does not believe that this information was ultimately communicated to CuIS, although it was gathered for that purpose.

Department of State records also demonstrate that since at least 1983 and until 2007, Kendall Myers made repeated false statements to government investigators responsible for conducting background investigations which determined Kendall Myers' continued suitability for a TOP SECRET security clearance. Specifically:

- On May 9, 1983, Kendall Myers falsely stated that he had never been an agent, representative, or otherwise acted for a foreign principal;

- On November 21, 1989, Kendall Myers failed to list any personal or continuing contacts he had with any communist country;

- On January 31, 1996, Kendall Myers falsely stated that he had no regular contact with foreign nationals;

- On December 29, 2000, Kendall Myers falsely stated that he had no contact with any foreign governments, establishment or representatives;

- On February 13, 2001, Kendall Myers falsely stated that no one in his immediate family was subject to foreign influence; that he had always acted as to indicate a preference for the United States over foreign countries; and that he knew of no other information that could suggest a conflict of interest or embarrass him, the State Department, or the United States; that his activities did not conflict with his security responsibilities or create an increased risk of unauthorized disclosure of classified information;

- On November 24, 2006, Kendall Myers falsely stated that he had no contact with any foreign governments, establishments, or representatives;

- On January 9, 2007, Kendall Myers falsely stated that he had no relatives, including his spouse, who were ever connected to a foreign intelligence service; that he had not had any unauthorized association with a suspected collaborator of a foreign intelligence service; and that he had no suspicions of being a target of a foreign intelligence service; that he had not acted so as to serve another government in preference to the interests of the United States; and that he had not disclosed sensitive or classified information.

These false statements were made by Kendall Myers in order to maintain access to classified national defense information for the benefit of CuIS and to maintain his employment with and salary from the Department of State.

\* \* \* \* \*

This factual proffer summarizes the offense charged in Count One of the Information and the defendant's participation in that offense. It is not intended to be a complete accounting of all

facts and events related to the offense. The limited purpose of this factual proffer is to demonstrate that a factual basis exists to support the defendant's plea of guilty in this case.

                      Respectfully submitted,

                      CHANNING D. PHILLIPS
                      Acting United States Attorney

By:   _____
      G. MICHAEL HARVEY
      Assistant United States Attorney
      D.C. Bar #447465
      U.S. Attorney's Office
      National Security Section
      555 Fourth Street, N.W. (11th Floor)
      Washington, D.C. 20530
      Tel: 202-305-4155
      Michael.Harvey2@usdoj.gov


_____
CLIFFORD I. RONES
MD Bar No. 8506010284
Senior Trial Attorney/Counterespionage Section
Department of Justice
1400 New York Avenue, N.W. (9th Floor)
Washington, D.C. 20005
Tel: 202-514-1124
Clifford.Rones@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer and have discussed it with my attorneys. I fully understand this factual proffer, and I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

_11/17/2009_
Date

_Gwendolyn Steingraber Myers_
Gwendolyn Steingraber Myers
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate.

_____
Date

_____
Thomas C. Green
Counsel for Defendant

_11/17/09_
Date

_Bradford A. Berenson_
Bradford A. Berenson
Counsel for Defendant

_____
Date

_____
Mark D. Hopson
Counsel for Defendant

- 13 -

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer and have discussed it with my attorneys. I fully understand this factual proffer, and I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

_11/17/2009_
Date

_Gwendolyn Steingraber Myers_
Gwendolyn Steingraber Myers
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate.

_11/17/09_
Date

Thomas C. Green
Counsel for Defendant

_11/17/09_
Date

Bradford A. Berenson
Counsel for Defendant

_11/17/09_
Date

Mark D. Hopson
Counsel for Defendant